In Re the MARRIAGE OF Janet SCHMIDT, Respondent,

and

Donald Schmidt, Appellant.

No. C5–87–2401.

Supreme Court of Minnesota.

Feb. 24, 1989.

Lawrence Hammerling, St. Paul, for appellant.

Brian D. Roverud, Blue Earth, for respondent.

KELLEY, Justice.

The court of appeals affirmed family court orders which, after asserting jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA),[1] awarded temporary custody of the parties' minor son to the respondent.[2] Appellant Donald Schmidt in this appeal challenges that assertion of jurisdiction; and, further, contends that the family court's various orders awarding his

wife temporary custody of their minor child were invalid because rendered *ex parte* without notice or opportunity to be heard and without particularized findings in contravention of Minn.Stat. §§ 518A.04, 518.-131 (1988) and Rule 7.05 of the Minnesota Rules of Family Court Procedure. We reverse both courts, but observe that had the family court supported its assertion of jurisdiction by appropriate written findings, facts existed which, if adopted by the family court, would have provided a statutory basis for such assertion under the UCCJA. We hold, however, that the family court's orders purporting to award temporary custody to respondent were invalid for noncompliance with statutory and rule requirements of notice and opportunity to be heard and supporting findings. We remand to the family court of Faribault County for appropriate jurisdictional fact findings, and for reinstitution of the collateral temporary custody proceedings in compliance with the statute and the rules.[3]

Donald Schmidt, appellant, married Janet Schmidt, respondent, in Mankato, Minnesota, on November 12, 1985. They lived and worked in Mankato until July, 1986, when they moved to Valdosta, Georgia. In Valdosta, the parties lived with Donald's parents until February, 1987, after which they rented a house. Their son, Jamie, whose custody is the subject of this action, was born on September 5, 1986, in Valdosta. In Valdosta both parents were employed full time. In May, 1987 the family left Georgia for Minnesota to be with Janet's father during his scheduled kidney surgery. For several weeks following their arrival in Minnesota, the parties resided with Janet's parents. Throughout these proceedings Donald has asserted the move was intended

---

1. By enactment of Act of Mar. 31, 1977, ch. 8, 1977 Minn.Laws 17, now codified as Minn.Stat. §§ 518A.01 to .25, Minnesota adopted, practically verbatim, the UCCJA. In this opinion, the two designations are used interchangeably.

2. *In re Marriage of Janet Schmidt v. Donald Schmidt* (Minn.Ct.App. filed May 18, 1988) (unpublished opinion) [1988 WL 51682].

3. The court of appeals panel was neither unaware of nor did it ignore these procedural deficiencies in its opinion. Indeed, it noted them, but, asserted that at the behest of the

appellant Donald Schmidt, it should proceed to address the jurisdictional issues on the merits without remanding for reinstitution of the action in conformance with due process requirements. Appellant's position here suggests that there may have been some misunderstanding on that point. Whether or not that was the case, it clearly appears that appellant did raise his due process claims before the panel, and on this appeal has raised both his due process and procedural challenges here. Obviously, the two are interrelated.

to be only temporary and that Georgia remained the family's state of residence. To the contrary, Janet has maintained that the move was meant to be permanent. She notes that appellant secured a job in Minnesota, and later, on July 1, 1987, moved out of her parents' home and into a rented apartment in Mankato. She did not join in the move as their marriage appeared to be deteriorating. On July 6, Donald and Janet spent several hours talking about the state of their marriage and discussing the future of their child. Donald claims that, during this conversation, Janet told him he could have custody of Jamie, and, further, that she, herself, suggested that he and Jamie return to Georgia. Janet, although admitting that the subject was discussed, contends she told Donald she was only thinking about giving Jamie's custody to him, but she denies making any suggestion that Donald be permitted to take Jamie from Minnesota to Georgia. When Donald consulted an attorney the next day, he was advised that he had resided in Minnesota an insufficient time to meet the Minnesota jurisdictional residency requirements necessary to commence a marital dissolution action.

On July 8, Janet brought Jamie over to Donald's apartment, along with one change of clothes, a diaper bag, toys, stroller and a car seat. Donald insists Jamie was brought over pursuant to his wife's previous decision to turn Jamie's custody over to him, and points out that in addition to the other items left with him, two baby books were given to him when he walked Janet to her car to unload the items. Respondent's version of what then occurred differs in substantial respects. She claims the baby was brought over to Donald merely for a visit, but that upon arrival appellant took Jamie from her and "threw" her out of the house. As support for her version, she emphasizes that she had brought along only one change of clothes, a few diapers and food for Jamie sufficient for no more than two meals.

Whichever version may be correct, it seems clear that each sought legal advice thereafter. Appellant's attorney apparently advised him that it would not be illegal for him to take the child with him to Georgia. Respondent, accompanied by her father, likewise consulted with an attorney concerning the parties' marital and custody problems.

After consulting with counsel, appellant unsuccessfully attempted to discuss their problems further with respondent. Thereafter, the next day, on June 9, he left Minnesota with Jamie and returned to Georgia to his parents' home in Valdosta.

On July 10, respondent commenced a legal separation action, and, ancillary thereto, a Faribault County court judge signed an *ex parte* show cause order returnable July 27 in which the court awarded temporary custody of Jamie to respondent. As noted by the court of appeals panel, this order was defective for failure to provide for proper notice or make appropriate findings. *See* Minn.Stat. §§ 518A.04–.05 (1988); Minn.Stat. § 518.131, subds. 1 and 3(b) (1988). Several days later, respondent and her mother journeyed to Georgia to attempt to acquire physical custody of the child, but appellant refused to either surrender custody or allow visitation. Following respondent's subsequent return to Minnesota, apparently as a result of information furnished by her to law enforcement officials, a Faribault County attorney issued a criminal complaint charging appellant with kidnapping in violation of Minn. Stat. § 609.26, subd. 1(1) (1988). On July 17, the Faribault County Family Court issued a new order in which it purported to assert jurisdiction pursuant to Minn.Stat. ch. 518A (UCCJA), again awarded temporary custody of Jamie to respondent, and ordered appellant to deliver the child to respondent. This order, like the July 10 order, was *ex parte*. Again, none of the findings required by chapter 518, by chapter 518A, nor by Family Court Rules accompanied the issuance of this order. Both the July 10 and the July 17 orders were served on appellant in Georgia on July 24. Later, on August 7, appellant was arrested in Georgia on the criminal complaint. Thereafter, both appellant and Jamie returned to Minnesota at which time respondent obtained physical custody of the child.

On August 14, the Faribault County Family Court issued yet another show cause order substantially identical to its July 10 order. It, likewise, purported to award temporary custody of the child to respondent, but it, too, was issued *ex parte* without notice of hearing or opportunity having been given appellant to be heard. That order likewise was not accompanied by appropriate findings. Thus, it, like its predecessors, was subject to the same legal infirmities as the July 10 order. That order, however, was served on appellant, who, by then, was in the Faribault County jail.

In due course appellant moved to dismiss the original legal separation proceeding. He also challenged the legality of the various temporary custody orders on the ground that the Faribault County Family Court lacked jurisdiction under the UCCJA. Alternatively, he asserted that if the Minnesota family court did have jurisdiction under the Act, in this instance, it had improperly gone about asserting it. Finally, appellant challenged the orders on the ground the temporary custody orders were invalid because they were issued in violation of his due process notice and hearing rights, and without compliance with relevant statutes and rules. On November 13, 1987, appellant filed for divorce in Georgia. The Georgia court awarded temporary custody of Jamie to respondent until it determined whether jurisdiction was available under the UCCJA. By order entered November 13, the Faribault County Family Court denied appellant's dismissal motion. It failed to further address the validity of the custody orders, but instead ordered a custody investigation, the result, of which, of course, was continuation of the temporary custody of Jamie in respondent as originally ordered in the prior *ex parte* orders.

■ (1) We first address appellant's claim that the Minnesota court lacked jurisdiction under the UCCJA. The Act provides that a Minnesota court has jurisdiction to make initial or modified child custody decrees if one or more of four factual circumstances have been found to exist.[4] The UCCJA seeks to address recurring problems seemingly indigenous to interstate custody disputes by providing a mechanism designed to resolve claims of concurrent jurisdiction by (a) attempting to identify the most appropriate forum in which to resolve custody issues in order to avoid or minimize interstate conflict; (b) seeking to deter parental abductions and other unilateral movement of children to gain advantage in custody disputes; and by serving the best interest of the child. UCCJA, § 1, 9 U.L.A. at 123-4, *codified at* Minn.Stat. § 518A.01 (1988). To facilitate the stated goals, the act generally establishes a "first in time priority." UCCJA, § 6, 9 U.L.A. at 219-20, *codified at* Minn.Stat. § 518A.06. Thus, before a Minnesota court can assert jurisdiction under the Act, it must first determine the existence or nonexistence of any pending custody proceeding in another state. If it finds one exists, it must stay

**4.** Those jurisdictional requirements are:

(a) this state (1) is the home state of the child at the time of commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and the parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(d)(1) it appears that no court in another state would have jurisdiction under prerequisites substantially in accordance with clause (a), (b), or (c), or a court of another state has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that a court of this state assume jurisdiction.

Uniform Child Custody Juris. Act, § 3, 9 U.L.A. at 143-44 (1988), *codified at* Minn.Stat. § 518A.03.

its own proceedings here. The Act likewise provides for an inconvenient forum analysis justifying a court to decline exercise of jurisdiction if it finds another state to be the more appropriate forum. UCCJA, § 7, 9 U.L.A. at 233–34, *codified at* Minn.Stat. § 518A.07 (1988). Most germane to that decision, of course, is the "best interest of the child" analysis outlined in UCCJA, § 7(c), 9 U.L.A. at 233, *codified at* Minn. Stat. § 518A.07, subd. 3.

■ Thus, the Act's goals are most likely to be achieved when a three-step approach is employed. First, the court must look to section three of the Act to determine whether it, in fact, does have jurisdiction. If it determines it does, its inquiry next focuses on whether another custody proceeding is pending in a court of another state which likewise has jurisdiction pursuant to the provisions of section three of the Act. Finally, if dual jurisdiction exists, the inconvenient forum issue must be addressed. *See Carson v. Carson,* 29 Or. App. 861, 565 P.2d 763, 764–65 (1977). Affd. 282 Or. 469, 579 P.2d 846 (1978).

One of the four jurisdictional bases is referred to as "home state" jurisdiction because it affords jurisdiction to a state if the child has resided in the state at least six months prior to the inception of the proceedings. UCCJA § 3(a)(1), 9 U.L.A. at 143; Minn.Stat. § 518A.03, subd. 1(a)(1). In the instant case, Minnesota does not have "home state" jurisdiction because Jamie had not lived with his parents or either of them in this state for six consecutive months. *See* UCCJA § 2(5), 9 U.L.A. at 133; Minn.Stat. § 518A.02(e).[5]

A second base has been designated as "emergency" jurisdiction. It is available only where the child has been subjected to or threatened by abuse. *See* UCCJA § 3(a)(3), 9 U.L.A. at 144; Minn.Stat. § 518A.03, subd. 1(c) (1988). This record contains insufficient evidence to establish "emergency" as a base for exercise of jurisdiction in this case.

A third base which might authorize a Minnesota court to assert jurisdiction would exist if it appears that no court in another state (here Georgia) would have "home state," "emergency" or "best interest" jurisdiction. *See* UCCJA, § 3(a)(4), 9 U.L.A. at 144; Minn.Stat. § 518A.03, subd. 1(d). Because Georgia likely had "home state" jurisdiction or may have had "best interest" jurisdiction in the instant case, Minnesota, under the Act, may not assert jurisdiction under this base, leaving only the so-called "best interest" jurisdiction.

■ A fourth base of jurisdiction is, of course, what is referred to as "best interest" jurisdiction, so called because it permits a state's court to assert jurisdiction of the custody dispute provided the court finds that to do so would serve the child's best overall interest. Factors bearing on such a finding include such considerations as whether the child and at least one parent reside or have resided in the state recently, whether the child and parent have or have recently had significant connections with the state so that the state's courts have readily available substantial evidence relative to the child's care, protection, training, family relationship and familial support. UCCJA § 3(a)(2), 9 U.L.A. at 143; Minn.Stat. § 518A.03, subd. 1(b). Maximum state contacts, rather than minimum, are required to support "best interest" jurisdiction.[6]

---

**5.** The UCCJA in section 3 and Minn.Stat. § 518A.03, subd. 1(a) use the words "within six months." However, section 2(5) of the UCCJA and section 518A.02(e) of the Minnesota statute make clear that the six-month residency requirement actually means a continuum of at least six months. *See also* Ratner, *Child Custody in a Federal System,* 62 Mich.L.Rev. 795, 818 (1964).

**6.** The Commissioner's comment to the UCCJA highlights the difference between the state's assertion of jurisdiction under the UCCJA, and, for example, its assertion of jurisdiction in a civil action under the state's "long arm" statute, Minn.Stat. § 543.19 (1988) when it states:

> [I]ts purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.

In this case, the essentially undisputed facts indicate that either Georgia or Minnesota could properly claim "best interest" jurisdiction. Factors such as that Jamie has spent practically all of his young life (prior to inception of this case), in Georgia in an apparently close relationship with paternal relatives would weigh in favor of any claim to jurisdiction Georgia might attempt to assert. On the other hand, other factors such as his adaptations to maternal relatives, and the availability of substantial evidence relative to the likelihood of future support, stability and training might well weigh in favor of Minnesota's assertion of "best interest" jurisdiction.[7] Not only does the phrase "best interest" itself contemplate that a court make an evaluation to determine which locale would most likely afford the child the best care and prospects, but the Act itself suggested that the court itself may conduct such a comparison by way of employment of an inconvenient forum analysis. UCCJA § 7, 9 U.L.A. at 233; Minn.Stat. § 518A.07.

Here, if the trial court had accepted all of the contentions of Janet and her supporting "evidence", while simultaneously rejecting those of Donald and "evidence" supporting them, a finding of Minnesota's "best interest" jurisdiction would be sustainable. But for the court to so conclude, it would have had to make a credibility analysis. Absent written findings entered after the trial court had the opportunity to "flesh out" the record such as it deemed necessary, an appellate court is unable to conclude that the trial court's assertion on best interest grounds was proper under the UCCJA. As indicated, there may well be Minnesota "best interest" jurisdiction, but generally it is inappropriate for an appellate court to comb the record and to make credibility assessments to assertain whether the trial court's assertion of UCCJA jurisdiction is appropriate. We suggest that better practice dictates that prior to the assertion of UCCJA jurisdiction, trial courts make written findings supporting the action. *See also* Minn.R.Fam.Ct.P. 7.05 (family court custody orders shall contain particularized findings of fact). In the instant case, even though such findings were not made, that omission, standing alone, would not have required reversal,[8] but since we are reversing on grounds later set forth in this opinion, we hold that on remand the trial court should make a "best interest" analysis and support its conclusion with written factual findings.

Application of the second step in the jurisdictional analysis involves ascertainment of whether a custody action is pending in another state. From the record before us, we are unable to determine whether the trial court in this instance attempted to determine the pendency of a custody action in Georgia, or what efforts, if any, were made by the court to do so. Ordinarily, we note it is likewise preferable that the trial court make a specific finding on this issue also so that any question concerning the propriety of the application of Minn. Stat. § 518A.06 is clearly resolved in the record.[9]

UCCJA, § 3, Comment, 9 U.L.A. at 145.

7. Factors afforded consideration by a court include the relative time the affected child has spent in the family and physical environment provided in each state, *see, e.g., St. Andrie v. St. Andrie,* 473 So.2d 140 (La.Ct.App.1985); *Houtchens v. Houtchens,* 488 A.2d 726 (R.I.1985); the weight afforded to present and predictable circumstances of the child, *see, e.g., Potter v. Potter,* 104 Misc.2d 930, 430 N.Y.S.2d 201 (N.Y.Fam.Ct. 1980); the quantity and quality of the child's past circumstances and attachments, *see, e.g., In re Marriage of Miche,* 131 Ill.App.3d 1029, 87 Ill.Dec. 72, 476 N.E.2d 774 (1985).

8. If, in fact, custody proceedings had only been commenced in Minnesota, "best interest" jurisdiction, in all probability, would properly have been asserted by the Minnesota court. *See* Blakesley, *Child Custody–Jurisdiction and Procedure,* 35 Emory L.J. 291, 303 (1986).

9. We observe that in this case that section is probably not applicable. Although a custody proceeding apparently now is pending in Georgia, it appears not to have been commenced until after the hearing on appellant's motion to dismiss the Minnesota action. Since there was no pending proceeding in Georgia in July, 1987, Minnesota may have been able to assume jurisdiction over the controversy under the "first in time" priority of section six of the UCCJA. *See, e.g., St. Andrie,* 473 So.2d at 144. On remand, however, if the Georgia proceeding is yet pending, the determination discussed in the text may be mandated.

The final step is to consider whether jurisdiction should be declined because another forum would be a more convenient one in which to resolve the issue. UCCJA § 7, 9 U.L.A. at 233; Minn.Stat. § 518A.07. In addition to the "best interest" analysis discussed above, the Act provides that the court *may* communicate with a court of another state and exchange information relative to the issue. Minn.Stat. § 518A.07, subd. 4. Appellant complains that prior to asserting jurisdiction under the Act, the trial court failed to make that communication. Even though the statute recognizes that in an appropriate case such an inquiry may be desirable, or even appropriate, to enhance the overall goals of the UCCJA, it does not in any place mandate such communication and exchange. Rather the statutory language employs the permissive "may." Additionally, in this case, although no findings exist establishing the fact, it appears reasonably clear that at the time the Minnesota court attempted to assert UCCJA jurisdiction in July, 1987, no similar proceeding was pending in any Georgia court. For those reasons, we decline to fault the trial court for then failing to exercise this discretionary type of inquiry in the light of this factual setting. However, in passing, we note that the evidence in the record made in the summer and fall of 1987 lends some support to appellant's contention that then the bulk of relative evidence concerning Jamie's custody was in Georgia. However, when this case goes back on remand, if the trial court finds yet pending a Georgia proceeding, it may decide to communicate with that forum and that such communication would be appropriate for consideration together with Jamie's status in connection with Minnesota since midsummer 1987. *See, e.g., In re Mullins*, 298 N.W.2d 56, 62 (Minn.1980) (trial court directed to contact authorities in California relative to custody issue).

In sum, while we conclude Minnesota may have "best interest" jurisdiction over this custody dispute, we believe it preferable that the case be remanded to the trial court for appropriate findings establishing its existence. In connection with that determination, the trial court should also review all the relevant facts, past and present, in deciding whether it should exercise its discretion and whether to assume or decline "best interest" jurisdiction on the inconvenient forum grounds provided in Minn.Stat. § 518A.07, subd. 3.

(2) In addition to his jurisdictional challenge, the appellant asserts that the orders dated July 10 and July 17, 1987, which purported to award temporary custody of his son to respondent violated his rights to due process because he was neither given notice of, nor afforded, a hearing prior to the time the orders were issued. He also claims that the order of July 17, as well as the trial court's order dated November 13, 1987, wherein the trial court assumed jurisdiction under the UCCJA, Minn.Stat. ch. 518A (1988), were issued in violation of Minn.Stat. § 518A.04 providing for notice and opportunity to be heard. Finally, he asserts that all three orders were illegal because they violated various other statutes and rules governing procedural requirements in custody matters.

As noted by the court of appeals, the trial court's order of July 10 awarding temporary custody is invalid. It was issued *ex parte*, with neither notice nor opportunity to be heard. As such, it cannot be used to grant custody "except upon a finding of the court of immediate danger of physical harm to the other party or to the children * * *". Minn.Stat. § 518.131, subd. 3(b). Additionally, the "particularized findings" required by Rule 7.05 of the Minnesota Family Court Rules of Procedure were not made. *See Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971) (high degree of particularized findings required in custody proceeding to aid in appellate review). In fact, the court made no finding on the issue.

In its order of July 17, the Faribault County Family Court asserted jurisdiction under the UCCJA and awarded temporary custody of Jamie to respondent. However, before doing so, it again failed to give appellant any notice and failed to provide him a hearing. Both notice and opportunity to be heard are prerequisites of the

court assuming jurisdiction under the Uniform Act. Strict compliance with these notice requirements is essential to the validity of a custody decree. *See* UCCJA, § 4, Comment, 9 U.L.A. at 208. Minn.Stat. § 518A.02(d) defines a "custody decree" as "a custody determination contained * * * in an order made in a custody proceeding, and includes an initial decree * * *." Neither the UCCJA nor Minn.Stat. ch. 518A specifically refers to temporary custody orders, but when considered in conjunction with the Parental Kidnapping Prevention Act [10] (PKPA), 28 U.S.C. § 1738A(e) which does include temporary custody orders as requiring notice and opportunity to be heard, and which must be complied with if the issuing state's temporary custody orders are to be entitled to enforcement in another state, we conclude that the intent of the legislature was that temporary custody orders should be included within the scope of Minn.Stat. §§ 518A.04–.05 (1988).

Courts which have had occasion to address the due process requirements of the UCCJA, § 4, 9 U.L.A. at 208; Minn.Stat. § 518A.04 have required strict adherence to the statute's terms, particularly when *ex parte* orders, such as the one here under consideration, have been involved. *See, e.g., Olson v. Priest*, 193 Colo. 222, 564 P.2d 122 (1977); *Sherry F. v. Bennett S.*, 131 Misc.2d 854, 502 N.Y.S.2d 383 (New York Fam.Ct.1986); *Giddings v. Giddings*, 228 N.W.2d 915, 919 (N.D.1975) (custody modification case); *Copeland v. Copeland*, 68 N.C.App. 276, 314 S.E.2d 297 (1984). We hold, that absent notice and opportunity to be heard, and absent any finding that the affected child was in danger, not only is the July 17 temporary custody order invalid, but also the trial court's assertion of jurisdiction under UCCJA likewise must be set aside.

■ Notwithstanding that the custody orders appear to have been entered without any consideration of applicable rules or statutes; that no findings required by statute or court rule accompany the various orders; and that no notice of hearing was

provided to appellant *prior* to their entry; the court of appeals concluded the August 14 order, which had been properly served, cured any due process defects inherent in the July 10 and July 17 temporary custody orders. The problem we see with that conclusion is that the August 14 order was also rendered *ex parte* and it, too, lacked the required findings. Finally, like its predecessors, it purported to award to respondent temporary custody. All the August 14 order accomplished was to provide appellant with notice that the previous July 10 and July 17 orders had, in fact, been entered.

■ Nor, in our view, can the temporary custody determination be salvaged by reference to the November 13 order. That order did not address anew the temporary custody issue; but instead left the prior illegal orders in effect while simultaneously ordering a custody study. With respect to the jurisdictional issue, all the November 13 order did was to deny appellant's dismissal motion. It failed to address by appropriate findings whether it then or at any other time had UCCJA jurisdiction.

Accordingly, we reverse and remand to the Faribault County Family Court for that court to make findings relative to establish the propriety of its assertion of jurisdiction in this custody case. To do so, and to make temporary custody determinations pending final adjudication of the issue, the Family Court must start anew and comply with notice and hearing requirements of Minn. Stat. ch. 518, 518A, and Family Court rules.

REVERSED.

■

---

**10.** The federal Parental Kidnapping Prevention Act (PKPA) requires notice and opportunity to be heard "before a child custody determination is made * * *". 28 U.S.C. § 1738A(e).