IN RE the MARRIAGE OF: Dean E. DAVIDSON, Petitioner-Respondent,

v.

Jane A. Richards DAVIDSON, Respondent-Appellant.

Court of Appeals

*No. 91-0677. Submitted on briefs November 6, 1991.—Decided May 28, 1992.*

(Also reported in 485 N.W.2d 450.)

549

For the respondent-appellant the cause was submitted on the briefs of *John H. Short* of *Vance, Wilcox, Short & Ristow, S.C.* of Fort Atkinson.

For the petitioner-respondent the cause was submitted on the brief of *William F. Hue* of *Krek & Hue, S.C.* of Jefferson.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   This is a child custody dispute between parents who have not yet divorced. The father, Dean E. Davidson, is a Wisconsin resident. The mother, Jane A. Richards Davidson, presently resides in Iowa with the parties' children, Dustin and Sara. The father began this action in Jefferson County Circuit Court April 20, 1990, for legal separation from his wife and for physical custody of their children. His wife moved to dismiss on the grounds that the court lacked jurisdiction over her person, and lacked subject matter jurisdiction to make any order determining legal custody or physical placement of the party's minor children. Prior to the circuit court's decision, the father amended his pleadings to initiate divorce proceedings. The circuit court denied the wife's motion and ordered the husband's action to proceed. We reverse and remand the cause and direct that the circuit court dismiss the father's action insofar as he seeks a determination of legal custody and physical placement of the parties' children.

## BACKGROUND

The mother and father were married July 14, 1979, in Council Bluffs, Iowa. Two children, Dustin and Sara,

were born to the parties during their marriage. The children were minors when the father began this action. The family lived in Ames, Iowa, from June 1983 to May 1985; Blair, Nebraska, from May 1985 to October 1988; and Council Bluffs, Iowa, from October 1988 to December 1989. On December 10, 1989, the father moved to Jefferson, Wisconsin, to begin a new job with a local bank. When the parties' residential lease in Council Bluffs expired, the mother and the children joined the father on December 31, 1989.

On April 12, 1990, the mother and the children returned to Council Bluffs, ostensibly to visit the mother's family after her father's death. In a telephone conversation on April 17, 1990, the mother informed the father that she did not intend to return to Wisconsin but planned to file an action for divorce in Iowa when she met Iowa's residency requirement. The father immediately began this action and served the mother in Iowa on April 23, 1990. The next day, the mother filed a petition in Pottawattamie County, Iowa district court for dissolution of the marriage and temporary custody of the children. On May 25, the Iowa court stayed proceedings before it pending the Jefferson County Circuit Court's determination of its jurisdiction. However, the Iowa court awarded the mother temporary custody of the children, subject to the father's visitation.

The mother appeared specially in this action on April 30, 1990, and moved to dismiss on the grounds that the circuit court lacked personal jurisdiction over her and the children, and lacked subject matter jurisdiction to determine custody of the children. On March 18, 1991, the circuit court denied the mother's motion.

The circuit court found that the mother was a Wisconsin resident when she filed her action in Iowa, and that her petition amounted to a legal fraud upon the

Iowa court. The court also found that the mother's move to Iowa violated the tenets and policies of the Uniform Child Custody Jurisdiction Act (UCCJA). The court concluded that therefore it had personal jurisdiction over the mother and the children. The court further concluded that it was not necessary to consider the UCCJA, ch. 822, Stats.,[1] and that it had subject matter jurisdiction over the father's action. Pending a decision by the family court commissioner, the court ordered that the status quo as to support and custody be maintained.

## THE ISSUES

We identify the following issues:

(1) Did the circuit court obtain personal jurisdiction over the mother when she was timely served with the pleadings in this action? We conclude that it did when the father served the mother personally in accordance with sec. 822.05(1)(a), Stats.

(2) Did the circuit court err when it concluded that it did not need to consider ch. 822, Stats., to determine its jurisdiction in this action to decide legal custody and physical placement of the children? We conclude that sec. 767.015, Stats., required that the circuit court apply ch. 822 to determine its jurisdiction.

(3) Did the circuit court err when it concluded that Iowa courts have no jurisdiction to determine legal custody and physical placement of the parties' children? We conclude that the Iowa courts' jurisdiction to determine the legal cus-

---

[1] In all material respects, ch. 822, Stats., is identical to the UCCJA.

tody and physical placement of the children is for the Iowa courts to determine.

(4) Does the mother lack standing to invoke the UCCJA because she unilaterally removed the children from Wisconsin to Iowa? We conclude that the mother's unilateral removal of the children from Wisconsin to Iowa is irrelevant to the circuit court's competency to proceed under ch. 822, Stats.

(5) Was the circuit court competent to determine legal custody and physical placement of the children under sec. 822.03(1)(d), Stats., because no other state had jurisdiction? We conclude that Iowa is the "home state" of the children, and therefore, an otherwise competent Iowa court may determine legal custody and physical placement of the children.

(6) Can the circuit court's assumption of jurisdiction to determine legal custody and physical placement of the children be sustained under sec. 822.03(1)(b), Stats., as a discretionary act in the best interest of the children? From our review of the record, we conclude that the circuit court would have abused its discretion had it assumed jurisdiction under sec. 822.03(1)(b), Stats.

██

The mother states that one of the issues is whether Wisconsin's exercise of jurisdiction over this child custody dispute is consistent with 28 U.S.C. § 1738A, the Parental Kidnapping Prevention Act (PKPA). However, compliance with the PKPA will not become an issue in a Wisconsin court unless a child custody determination by a court of another state is attacked or sought to be modified in a Wisconsin court. In 28 U.S.C. § 1738A(a), it is provided:

The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another state.

The purpose of the PKPA is to make applicable to child custody determinations the full faith and credit clause of the U.S. Constitution, article IV, section 1. *Michalik v. Michalik,* 164 Wis. 2d 544, 550, 476 N.W.2d 586, 589 (Ct. App. 1991), *petition for review granted* January 7, 1992. *See* Steven M. Schuetze, Note, *Thompson v. Thompson: The Jurisdictional Dilemma of Child Custody Cases Under the Parental Kidnapping Prevention Act,* 16 Pepp. L. Rev. 409 (1989). If the UCCJA conflicts with the PKPA, the latter prevails. *In re A.E.H.,* 161 Wis. 2d 277, 322, 468 N.W.2d 190, 208 (1991). We see no conflict.

If the Iowa district court or the court of another state makes an order or decree determining legal custody or physical placement of the children, a Wisconsin court asked to modify that order or decree will have to decide whether the order or decree was made consistently with the provisions of the PKPA. In this action, however, we determine whether the Jefferson County Circuit Court's decision was made consistently with ch. 822, Stats.

I.
PERSONAL JURISDICTION

The mother contends that the circuit court's finding that she was a Wisconsin resident subject to the court's jurisdiction of her person under sec. 801.05(1)(b), Stats.,

555

when the father began this action is clearly erroneous and therefore the circuit court erred in concluding that it could make an order as to legal custody and physical placement which would bind the mother. We need not decide whether the circuit court's finding as to the mother's residence is clearly erroneous. In a "custody"[2] proceeding under ch. 822, Stats., jurisdiction over a parent outside the state is acquired by notice given as prescribed in sec. 822.05, Stats. Such notice may be given by personal delivery outside the state in the manner prescribed for service of process within the state. Section 822.05(1)(a), Stats. The father personally served the mother in Iowa with notice of this action.

The requirements of due process under the fourteenth amendment are met in a child custody proceeding under the UCCJA when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard in the manner provided by the UCCJA. *Leonard v. Leonard,* 175 Cal. Rptr. 903, 912 (Cal. Ct. App. 1981). *See also Thompson v. Thompson,* 129 Wis. 2d 348, 352, 384 N.W.2d 713, 716 (Ct. App. 1986) (circuit court acquired jurisdiction over father under sec. 822.05, Stats., because he was personally served in Minnesota with an amended summons and petition seeking custody of the child).

---

[2]Under sec. 822.02(2), Stats., a "custody determination" includes court orders providing for legal custody, physical placement, and visitation.

## II.
## APPLICATION OF UCCJA

The circuit court concluded that it was not necessary that it consider ch. 822, Stats., to determine its competence to decide the legal custody and placement issues. The court considered that the place of trial was no longer critical, in view of the liberal use of telephone testimony and other adjuncts. Irrespective of the circuit court's conclusion that the UCCJA may be obsolete, the circuit court erred when it ignored sec. 767.015, Stats., which provides: "All proceedings relating to the custody of children shall comply with the requirements of ch. 822."

Far from being obsolete, the UCCJA provides a mechanism for resolving interstate child custody disputes. The Act employs a three-step approach to identify the most appropriate forum in which to resolve child custody disputes. *In re Schmidt,* 436 N.W.2d 99, 104 (Minn. 1989). First, the court looks to section three of the Act [sec. 822.03, Stats.] to determine whether it has jurisdiction. *Schmidt,* 436 N.W.2d at 104. If it does, it next focuses on whether another custody proceeding is pending in a court of another state which likewise has jurisdiction under the Act. *Id.* Finally, if dual jurisdiction exists, the inconvenient forum issue must be addressed. *Id.;* UCCJA § 7, 9 U.L.A. 233–34 (1988) [Section 822.07, Stats.].

We emphasize that there are no immutable rules of jurisdiction under the UCCJA, only preferences. The Act contemplates that the courts of competing states will communicate with one another so that the more appropriate forum to resolve child custody disputes will be

selected. UCCJA § 6, 9 U.L.A. 219–20 [sec. 822.06, Stats.]. The Act also expects that a court which has jurisdiction under the Act will defer to the court of another state which is a more appropriate forum. *Id.* § 7, 9 U.L.A. 233–34 [sec. 822.07, Stats.]. The court must always act in the best interest of the child. *Schmidt*, 436 N.W.2d at 104. *See In re A.E.H.*, 161 Wis. 2d 277, 468 N.W.2d 190 (1991) (where principles of the UCCJA were applied to resolve a complicated interstate child custody dispute).

In the usual course, we would reverse the circuit court's order and remand to allow the court to proceed under ch. 822, Stats. However, the case was argued to the circuit court under ch. 822, and an extensive record is presented for our review. The fact that the circuit court failed to make the findings necessary under ch. 822 does not prevent this court from reviewing the record to determine whether the evidence supports the circuit court's decision. *See Dodge v. Carauna*, 127 Wis. 2d 62, 67, 377 N.W.2d 208, 211 (Ct. App. 1985) (appellate court may search record for evidence sustaining trial court's decision).

There is the additional fact that remand will further delay determining the pressing issues of legal custody and physical placement of the children.[3] We are reluctant to remand for further proceedings in such matters

[3]In *In re R.H.*, 147 Wis. 2d 22, 37, 433 N.W.2d 16, 22 (Ct. App. 1988), *aff'd per curiam by equally divided court*, 150 Wis. 2d 432, 441 N.W.2d 233 (1989), we stated: " '[T]o avoid irreparable psychological injury, placement, whenever in dispute, must be treated as the emergency that it is for the child.' " (quoting J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* at 43 (1973)).

unless a decision requires the finding of facts which we are constitutionally disabled from making, *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980), or unless we would be exercising discretion vested exclusively in the trial court, *Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820, 826 (1980). Neither of these circumstances is present here.

## III.
## FRAUD ON THE IOWA COURT

The circuit court found that the mother was a resident of Wisconsin when she filed her Iowa divorce action and that therefore her petition amounted to a legal fraud upon the Iowa court. The question of the Iowa district court's jurisdiction over the mother's petition is for the Iowa courts to answer and is irrelevant to the jurisdiction of the Jefferson County Circuit Court. If the mother practiced a fraud upon the Iowa court, her act cannot confer jurisdiction upon the Wisconsin court.

## IV.
## MOTHER'S STANDING

The circuit court held that the mother's unilateral removal of the parties' children to Iowa violated the tenets and policies of the UCCJA and therefore she lacked standing to invoke the provisions of the UCCJA. The father cites sec. 822.01(1)(e), Stats., which provides that one of the purposes of the UCCJA is to "[d]eter abductions and other unilateral removals of children undertaken to obtain custody awards." The father argues that the mother's unilateral act of removing the children from their home in Wisconsin has made a mockery of the purposes of the UCCJA. He therefore "collaterally

challenges the jurisdiction of the Iowa order for dissolution."

The father argues that the Iowa court must dismiss the mother's petition under Iowa Code § 598A.8 (1991), which empowers an Iowa trial court to decline to exercise jurisdiction if the petitioner for an initial custody decree has wrongfully taken the child from another state. Again, it is up to the Iowa court to decide whether it will decline to exercise jurisdiction over the mother's petition. Iowa Code § 598A.8 (1991) is discretionary; the court may decline to exercise jurisdiction "if this is just and proper under the circumstances." The Jefferson County Circuit Court cannot exercise the Iowa court's discretion. Further, the Jefferson County Circuit Court's jurisdiction under the UCCJA is unaffected by the mother's misconduct.

This is not a case in which the mother seeks affirmative relief from a Wisconsin court; she simply insists that the circuit court make its decision as to its jurisdiction in accordance with the UCCJA. We therefore hold that the circuit court erred when it concluded that by removing the children from Wisconsin to Iowa, the mother lost standing to insist that the Jefferson County Circuit Court apply the UCCJA in determining its competency to make an order as to the legal custody and physical placement of the children.

## V.
## JURISDICTION UNDER SEC. 822.03(1)(d), STATS.

The father argues that "[b]ecause no other state has jurisdiction *and* it is in the best interest of the children, Wisconsin must take jurisdiction." (Emphasis in original.) Section 822.03(1), Stats., provides:

> A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> . . ..
>
> (d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with par. (a), (b) or (c) . . . and it is in the best interest of the child that this court assume jurisdiction.

The father thus concedes that the Jefferson County Circuit Court did not have jurisdiction under the "home state" provision of the UCCJA, sec. 822.03(1)(a), Stats.

The father's argument requires that we consider whether Iowa courts have jurisdiction. Iowa has adopted the UCCJA. *See* Iowa Code §§ 598A.1 to 598A.25 (1991); 1977 Iowa Acts 139. The Iowa statute is virtually identical to sec. 822.03(1)(a), Stats., and provides:

> 1. A court of this state which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification decree if:
>
> a. This state is the home state of the child at the time of commencement of the proceeding . . . and a parent or person acting as parent continues to live in this state . . ..

Iowa Code § 598A.3 (1991). "Home state" is defined by UCCJA § 2(5), 9 U.L.A. 133. This definition is found in Iowa Code § 598A.2(5) (1991), and is virtually identical to sec. 822.02(5), Stats., which defines "home state" as follows:

> "Home state" means the state in which the child immediately preceding the time involved lived with

the child's parents, a parent, or a person acting as parent, for at least six consecutive months . . ..¨

Wisconsin is not the children's "home state" because they lived with their parents in Wisconsin for less than six consecutive months. However, the children lived with their parents in Iowa from October 1988 to December 31, 1989, a period of almost fifteen consecutive months. Iowa is therefore the children's home state and its courts have jurisdiction to make custody determinations as to them. Iowa Code § 598A.3(1)(a) (1991).

We were presented with a similar situation in *Vorpahl v. Lee,* 99 Wis. 2d 7, 298 N.W.2d 222 (Ct. App. 1980). There, Vorpahl abducted the children from the state of Washington and returned with them to Wisconsin. Two weeks after returning to Wisconsin, Vorpahl began an action in Wisconsin for change of custody. We held that because the children had lived in Washington for approximately four years prior to their removal to Wisconsin, Washington met the statutory definition of home state. *Id.* at 11, 298 N.W.2d at 225.

## VI.
## "BEST INTEREST" JURISDICTION UNDER SEC. 822.03(1)(b), STATS.

The fact that Iowa is the children's home state does not deprive a Wisconsin court of jurisdiction to make custody determinations if one of the other ways of acquiring jurisdiction under sec. 822.03(1), Stats., is satisfied. The father argues that the Jefferson county circuit court could exercise custody jurisdiction because it is in the best interest of the children that the court assume jurisdiction and "there is available in this state substantial evidence concerning the child's present or

562

future care, protection, training, and personal relationships." Section 822.03(1)(b), Stats.

The children's home state is the preferred forum. *Joselit v. Joselit,* 544 A.2d 59, 61 (Pa. Super. Ct. 1988). The drafters of the UCCJA anticipated that more than one state might claim jurisdiction under the "significant contacts" provision of the UCCJA, sec. 822.03(1)(b), Stats. They stated that such a jurisdictional deadlock would be broken as follows:

> In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state *or the child and his family have equal or stronger ties with another state,* a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections 6 and 7 [secs. 822.06 and 822.07, Stats.] are used to assure that only one state makes the custody decision.

Comment to UCCJA § 3, 9 U.L.A. 144 (emphasis added). For an extensive discussion as to how a jurisdictional deadlock under the UCCJA is broken, see *In re A.E.H.,* 161 Wis. 2d at 309–314, 468 N.W.2d at 203–05. In *A.E.H.,* the court concluded that although the child's home state was California, the Wisconsin circuit court had jurisdiction under sec. 822.03(1)(b), Stats., because there was a significant connection between the child and Wisconsin and no significant connection between the child and California.

Here, the record shows that the children have significant contacts with Iowa and only minimal contacts with Wisconsin. The mother and father were married in Council Bluffs, Iowa. The family lived there from October 1988 to December 1989. Dustin resided in Iowa from his birth except for the period in which he lived in Blair,

563

Nebraska, thirty-five miles from Council Bluffs. Sara lived in Blair, Nebraska, from birth until October 1988 and then resided in Iowa except for the twelve-and-a-half weeks in which both children lived with their parents in Wisconsin. Both parents were born in Iowa. Both parents have siblings living in Iowa. The children's grandparents live in Iowa. The mother testified that a number of witnesses were available in Iowa to testify as to the parties' relative parenting skills and there was no one in Wisconsin who could offer such testimony.

It is true that the family had begun a new life in Wisconsin. The parents were renting but were looking for a permanent home in Jefferson. Dustin and Sara were enrolled in school and pre-school respectively. Dustin was enrolled in Cub Scouts. The Davidsons were members of a church in Jefferson. However, the presence of the children in Wisconsin with the family was short-term. The drafters of the UCCJA stated that the "best interest" jurisdiction "comes into play either when the home state test cannot be met or as an alternative to that test." Comment to UCCJA § 3, 9 U.L.A. 144. The drafters give as an example of an alternative to the home state test the situation where the wife returned to her parents in her former home state where the child had spent several months every year. *Id.* at 145. Here, the mother, after a short stay in Wisconsin, returned to her mother in her home state where the children had lived, off and on, for most of their lives. Applicable here is the drafter's comment that, "Short-term presence in the state is not enough even though there may be an intent to stay longer, perhaps an intent to establish a technical 'domicile' for divorce or other purposes." *Id.*

The drafters further comment as follows:

> Paragraph (2) [sec. 822.03(1)(b), Stats.] perhaps more than any other provision of the [UCCJA] requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.

*Id.* (emphasis in original).

From our review of the record, we conclude that the Iowa courts have optimum access to relevant information about the children and their parents. We therefore conclude that the evidence would not support the exercise by the circuit court of its discretion to assume jurisdiction under sec. 822.03(1)(b), Stats. We therefore reverse the circuit court's order insofar as by that order the court assumed jurisdiction to determine legal custody and physical placement of the children. We remand the cause and direct that the circuit court dismiss that part of the father's action which seeks a determination of legal custody and physical placement of the children.

*By the Court.*—Order reversed as to assumption of jurisdiction over the issues of legal custody and physical placement and cause remanded with directions.