COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1982**

STATE OF WISCONSIN

Cir. Ct. No. 2021FA858

IN COURT OF APPEALS
DISTRICT II

IN RE THE MARRIAGE OF:

ROSA ALBINA RODRIGUEZ VARGAS,

PETITIONER-APPELLANT,

V.

JORGE ISAEL NOLLA,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Racine County: KRISTIN M. CAFFERTY, Judge. *Affirmed.*

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Rosa Albina Rodriguez Vargas appeals from an order of the circuit court dismissing her child custody petition pursuant to WIS. STAT. § 822.26 (2023-24).[1]  Vargas argues that the court erred in concluding that Mexico has primary jurisdiction based on the child's father, Jorge Isael Nolla, having filed his custody petition in Mexico before Vargas petitioned the Wisconsin court.  We conclude that the court correctly ceded jurisdiction to Mexico.  Affirmed.

## BACKGROUND

¶2     The following facts, which the circuit court found based upon information and affidavits submitted by the parties, are undisputed.  Vargas was born in Mexico and is a Mexican citizen.  Nolla was born in Puerto Rico and is a United States citizen.  Vargas and Nolla were married in Mexico in 2016.  They have one child together, a son named Nicholas,[2] who was born in Wisconsin and has dual citizenship in Mexico and the United States.  Vargas has another son who lives in Mexico, and Nolla has two other children living in Mexico.

¶3     For several years after Nicholas was born, the parties lived in Racine, Wisconsin while Nolla also traveled extensively for his business, often spending time in Mexico.  Nicholas visited Mexico with both parties during this time period.  During the COVID-19 crisis, the parties reportedly planned to move to Texas, but issues with schools caused Vargas, Nolla, and Nicholas to move to

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  We use a pseudonym to refer to the parties' minor child.

Mexico instead of Texas. They lived in Mexico from mid-April 2021 until August 14, 2021.[3]

¶4      While living at a home in Mexico with Vargas, Nicholas participated in school interviews, engaged in therapy sessions and other appointments, was seen by a pediatric neurologist, and was diagnosed with autism. In August 2021, Vargas took Nicholas from Mexico and brought him to Wisconsin, allegedly without telling Nolla of her plans.

¶5      On September 8, 2021, Nolla filed for divorce in Mexico. Vargas was served with Nolla's divorce petition on January 29, 2022. On October 15, 2021, Vargas filed for legal separation in Racine County, Wisconsin. Vargas subsequently filed a motion to stay proceedings seeking to have the Wisconsin and Mexico courts communicate under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Each party also wrote to the Wisconsin court requesting that it stay proceedings and communicate with the court in Mexico pursuant to the UCCJEA.

¶6      At the request of the parties, the Wisconsin court contacted the Mexico court seeking to schedule a Zoom conference and suggesting a possible date to confer. The Wisconsin court did not receive a response from the Mexico court, but the judge assigned to the case in Mexico called the Wisconsin court at the suggested time and the courts held their first conference. A court reporter

---

[3] Although Vargas and Nolla own real estate in Escuinapa, Mexico, and Nolla was reportedly staying at that property with his other children, the circuit court found that the "intent of the parties and intended duration of the move is in dispute." Nolla stated that the move to Mexico was permanent to pursue business opportunities and be closer to Vargas' family, and Vargas said the move was temporary until they could relocate to Texas.

recorded the conversation of the two judges, and a translator effectuated communication between the two. The courts agreed the sole issue was which court would exercise jurisdiction over the matter, and they discussed each of the cases in terms of their respective filing dates, service on the other party, and other basic details. The Mexico court stated it believed it had jurisdiction over the family, and the courts decided to reconvene.

¶7 The two courts later held another conference at which they discussed issues including which court had jurisdiction, the parties' conflicting accounts regarding residency, and appointing a guardian ad litem or social worker to provide a recommendation for the child's best interest should the case ultimately land in the Mexico court. The Wisconsin court kept the parties informed regarding these and its other communications with the Mexico court.

¶8 To assist the courts with the jurisdiction determination, the parties provided substantial factual information and legal arguments to both courts in both English and Spanish. The circuit court indicated that it had appointed a guardian ad litem to address the Mexico court's questions relating to the best interest of the child, and to answer questions to satisfy the court in Mexico in relation to jurisdiction. The Mexico court ultimately affirmed that it would keep its jurisdiction, and the circuit court determined that it was required to dismiss the Wisconsin action and cede jurisdiction over the family to Mexico. The court issued a detailed written decision and order in which it conducted a step-by-step jurisdictional analysis under WIS. STAT. ch. 822 and explained its dismissal of Vargas' petition. Vargas appeals.

**DISCUSSION**

¶9      It is undisputed that this legal separation proceeding, commenced October 15, 2021, presents an initial custody determination as to Nicholas.  The UCCJEA governs interstate child custody disputes and is adopted in WIS. STAT. ch. 822.  WISCONSIN STAT. § 822.21, which governs initial custody jurisdiction, is the exclusive jurisdictional basis for making a child custody determination by a court of this state, and the physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.  Sec. 822.21(2)-(3).

¶10     The UCCJEA provides "a mechanism for resolving interstate child custody disputes." *Davidson v. Davidson*, 169 Wis. 2d 546, 557, 485 N.W.2d 450 (Ct. App. 1992).  Unlike prior laws, the UCCJEA sets forth "clear rules" that, in theory, always locate jurisdiction over custody proceedings in a single state. *Hatch v. Hatch*, 2007 WI App 136, ¶12, 302 Wis. 2d 215, 733 N.W.2d 648. Under the UCCJEA, "home state jurisdiction always receives priority, and other jurisdictional bases are available only when there is no home state, or where the home state declines jurisdiction." *Id.*

¶11     The determination of jurisdiction under the UCCJEA is a question of law, which we review de novo.  *N.J.W. v. State*, 168 Wis. 2d 646, 652, 485 N.W.2d 70 (Ct. App. 1992).  "The findings of fact made by the [circuit] court" in determining jurisdiction "will be sustained unless they are against the great weight and clear preponderance of the evidence." *Vorpahl v. Lee*, 99 Wis. 2d 7, 10, 298 N.W.2d 222 (Ct. App. 1980).

¶12     Pursuant to WIS. STAT. § 822.21(1)(a), a Wisconsin court has jurisdiction to make an initial determination if the state is the "home state" of the

child on the date of the commencement of the proceeding, or the state was the home state of the child within the six months prior to the commencement of the proceeding and the child is absent from the state but a parent or person acting as a parent continues to reside in the state. It is undisputed that Nicholas was not in either Wisconsin or Mexico for six months straight in the time before the petition was filed. *See* WIS. STAT. § 822.02(7) ("Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.). Because there is no "home state" here, as the parties concede, we look to the next step in the statutory scheme to determine jurisdiction, as did the circuit court.

¶13    If there is not a state with "home state" jurisdiction or a court of the home state of the child has declined to exercise jurisdiction, a court must determine whether the child and the child's parents have a significant connection with this state other than mere physical presence, and whether substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. WIS. STAT. § 822.21(1)(b). The circuit court concluded here that the child and the parties have significant connections with Mexico and Wisconsin. Vargas argues that the court's conclusion is erroneous "as it failed to provide facts in evidence to support a finding that [Nicholas] had significant ties to Mexico or any evidence that there was substantial evidence in Mexico as to his care, protection, training[,] and personal relationships." Based on our review of the record, we disagree.

¶14    We conclude that the evidence presented to the two courts was sufficient to support the circuit court's findings. *See **Vorpahl***, 99 Wis. 2d at 10. For example, the parties married in Mexico, Nolla lived and worked in Mexico, and both parties had family in Mexico, including other children, when the

competing petitions were filed. Vargas was born in Mexico, is a citizen of Mexico, and traveled to Mexico when living in Wisconsin with Nolla and Nicholas. Additionally, Nicholas has dual citizenship in both Mexico and the United States, and Vargas claimed Nolla spent the vast majority of his time in Mexico during the years they lived in Wisconsin. Further, as noted above, the court concluded that substantial evidence exists in Mexico regarding Nicholas' care, protection, training, and personal relationships. Based on these and additional facts in the record, we conclude that the circuit court did not err in deciding that either Mexico or Wisconsin could appropriately exercise jurisdiction and proceeding with the jurisdictional analysis.

¶15 The next step in the jurisdictional analysis governs "simultaneous proceedings" such as those at issue here. WISCONSIN STAT. § 822.26 provides that "a court of this state may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter[.]" Sec. § 822.26(1). Vargas argues that the circuit court erred in its conclusion that Mexico has jurisdiction over the family "substantially in conformity with Chapter 822 of the Wisconsin Statutes." We again disagree with Vargas.

¶16 WISCONSIN STAT. § 822.26 clearly and unambiguously commands that a Wisconsin court shall dismiss the proceeding if it determines that a child custody proceeding has commenced in a court in another state having jurisdiction substantially in accordance with WIS. STAT. ch. 822. Sec. 822.26(1)-(2). "Commencement" means the "filing of the first pleading in a proceeding, provided that service is completed in accordance with the applicable provisions of WIS. STAT. ch. 801." WIS. STAT. § 822.02(5). There is no dispute that the action in

Mexico was commenced first when Nolla filed his divorce case on September 8, 2021. Vargas later filed for legal separation in Racine County on October 15, 2021. Service also was accomplished on Vargas before Nolla was served in Vargas' action. Vargas does not dispute this timeline. Therefore, the circuit court did not err in concluding that there were "simultaneous proceedings" in Mexico and Wisconsin and in applying the "first in time" rule as we now discuss.

¶17 The UCCJEA has a "first in time" rule when simultaneous proceedings occur. This means that when there are two cases filed in two different jurisdictions, the case filed first continues and the subsequently commenced action shall be dismissed. WIS. STAT. § 822.26(2). This test is in place to simply decide jurisdictional disputes. We conclude that the circuit court correctly dismissed Vargas' petition because the action in Mexico was commenced first, and Mexico has jurisdiction substantially in accordance with Chapter 822.

¶18 Finally, we briefly touch on Vargas' argument that the circuit court's jurisdictional decision should be overturned because the Wisconsin and Mexico courts had communications regarding the case that were off the record without considering adequate input from the parties. WISCONSIN STAT. § 822.10 requires that when there is communication between a court of this state and a court of another state concerning a proceeding arising under Chapter 822 of the Wisconsin Statutes, "[i]f the parties are not able to participate in the communication, they shall be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." Sec. 822.10(3). We have noted above that the parties submitted affidavits with their factual assertions and briefs with their legal arguments to both courts in both English and Spanish. The court issued a thorough decision in which it recounted with detail, the positions of the parties as to jurisdiction and as to the considerations of the courts in determining

8

jurisdiction. We conclude that the decision and order is accurate both factually and analytically. Therefore, Vargas does not persuade us that the Wisconsin circuit court erred in ceding jurisdiction or the Mexico court erred in exercising jurisdiction.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.