In re the Marriage of Kimberly Jean **ABU–DALBOUH, Petitioner, Respondent,**

v.

**Ibrahim Majed ABU–DALBOUH, Appellant.**

No. C4–95–2628.

Court of Appeals of Minnesota.

May 14, 1996.

Herbert C. Kroon, Chesley, Kroon, Chambers, Ingram & Harvey, Mankato for Respondent.

Randall C. Berkland, Stephen P. Rolfsrud, Blethen, Gage and Krause, Mankato, for Appellant.

Considered and decided by WILLIS, P.J., and CRIPPEN and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Ibrahim Majed Abu–Dalbouh appeals from (1) a district court order denying his motion to dismiss the marital dissolution and (2) a subsequent district court order denying his motion to modify the previous order. We affirm the district court as to dissolution, child custody, and child support. On the issue of visitation, we affirm as modified.

## FACTS

On July 10, 1986, in Minnesota, respondent Kimberly Jean Abu–Dalbouh, a Minnesota resident and United States citizen, married appellant Ibrahim Majed Abu–Dalbouh, a Jordanian citizen. Their first child was born in Minnesota that year. The parties moved to Jordan in 1987, where they had two more children. Affidavits submitted to the district court reveal respondent's and children's history of malnutrition, neglect, mental abuse, and physical abuse at the hands of appellant. Although the specific instances of abuse are too numerous to mention here, we note appellant's refusal to buy medicine for his family's illnesses, his beatings of respondent and the children, the forced abortion of their fourth child, and mental abuse resulting in the oldest child's difficulty with incontinence and the middle child's speech impediment.

In March 1994, with the assistance of the United States Embassy, respondent secretly moved to Minnesota with the children. On October 12, 1994, she filed a petition for dissolution of the marriage. Neither party will divulge his or her address to the other. Respondent's attorney is authorized to accept service, but appellant's attorney is not. Attempts to serve appellant by mail at his last two addresses in Jordan, at the Jordanian Embassy where he is believed to work, and at his relative's home in Chicago have failed. The court ordered service of the petition for dissolution by publication in Chicago and Washington, D.C. newspapers. The notice ran for three weeks without answer.

On May 25, 1995, respondent filed a notice of intent to proceed by default. On June 6, 1995, appellant filed a motion opposing the default proceeding and moving to dismiss for improper service and lack of jurisdiction. The default hearing was held on June 7, 1995.

On September 15, 1995, the district court ordered:

1.  That [appellant]'s motion to dismiss the dissolution for lack of notice is DENIED.

2.  That [appellant]'s motion to dismiss with respect to maintenance, attorney's fees, marital property and marital debts is GRANTED.

3.  That [appellant]'s motion to dismiss with respect to custody of the children is DENIED.

4.  That [respondent] is granted temporary sole legal and physical custody of

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the children until further order of the court.

5. That [appellant]'s motion to dismiss with respect to child support is DENIED for the oldest child, [MIA].

6. That [appellant]'s motion to dismiss with respect to child support for the other two children of the marriage is GRANTED.

7. That [appellant] is allowed liberal supervised visitation.

On October 4, 1995, based on a Jordanian decree for "joining of children,"[1] appellant moved to modify the September 15, 1995 order. The district court denied the motion on November 13, 1995.

## ISSUES

I. Did the district court err in its conclusion that service by publication was an appropriate means of notifying the appellant-father of the dissolution action?

II. Did the district court err in its conclusion that it had jurisdiction to dissolve the marriage and decide child custody and child support?

III. Did the district court err in awarding appellant-father liberal visitation?

## ANALYSIS

### I.

■ Determination of whether service of process was proper is a question of law. *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992). A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

■ Minn. R. Civ. P. 4.04 permits service by publication "[w]hen the action is for marriage dissolution or separate maintenance and the court has ordered service by published notice." The rule also requires the plaintiff to file an affidavit with the court stating that

affiant believes the defendant is not a resident of the state or cannot be found therein, and either that the *affiant has mailed* a copy of the summons to the defendant at the defendant's place of residence or that such *residence is not known* to the affiant.

*Id.* (emphasis added). Even though service by publication is not a reliable means of notifying interested parties, Minnesota recognizes service by publication in situations " 'where it is not reasonably possible or practicable to give more adequate warning.' " *Gill v. Gill*, 277 Minn. 166, 171, 152 N.W.2d 309, 313 (1967) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950)). There is no Minnesota precedent on the adequacy of service by publication on a nonresident defendant living in a foreign country at an unknown address.[2]

■ In this case, service of the petition by mail to appellant's two last-known addresses was returned, forwarding address unknown. Respondent's affidavit to the district court states that she has "tried diligently" to serve her husband and to locate his new address. She found no one who knew his exact location. We reject appellant's argument that because respondent did not first attempt personal service in Jordan, service of process was invalid. To the contrary, the service-by-publication statute only requires a failed attempt to serve by mail. Based on respondent's compliance with the statute, her

---

1. For purposes of this appeal, we assume copies of Jordanian documents in the record are authentic.

2. We note, however, that other jurisdictions have recognized that service of process by publication on a defendant residing in a foreign country at an unknown address may be valid if there is no other practicable means of notifying defendant of the suit and if the plaintiff uses reasonable diligence to determine defendant's address. *See, e.g., Quaranta v. Merlini*, 192 Cal.App.3d 22, 237 Cal.Rptr. 179, 185 (1987) (applying *Mullane* for the proposition that notice by publication is inadequate to inform foreign defendants of suit if defendants could be notified by more effective means); *Demianczuk v. Demianczuk*, 20 Ohio App.3d 244, 485 N.E.2d 785, 789 (1984) (stating that plaintiff must use "reasonable diligence" under Ohio statute to serve defendant at *some* last-known address before resorting to service by publication).

affidavit, appellant's attempt to keep his address secret, and his refusal to allow his attorney to accept service of process, we hold the district court correctly determined service by publication was both necessary and sufficient.

## II.

■ Jurisdictional disputes are legal questions to be reviewed de novo. *Frost–Benco,* 358 N.W.2d at 642; *Mahoney v. Mahoney,* 433 N.W.2d 115, 117 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989). We reject both appellant's argument that the Uniform Child Custody Jurisdiction Act (UCCJA) does not apply to international custody disputes and his argument that the Minnesota courts do not have jurisdiction under the UCCJA to determine custody of his children.

### A. UCCJA

As a preliminary matter, Minn.Stat. § 518A.23 (1994) expressly provides that the general policies of sections 518A.01 to 518A.25 (Minnesota's adoption of the UCCJA) "extend to international proceedings." Therefore, appellant's threshold argument fails, and we continue our inquiry into whether the Minnesota courts have jurisdiction under the UCCJA to determine custody of the Abu–Dalbouh children.

■ To determine jurisdiction under the UCCJA,

a three-step approach is employed. First, the court must look to section three of the Act to determine whether it, in fact, does have jurisdiction. If it determines it does, its inquiry next focuses on whether another custody proceeding is pending in a court of another state which likewise has jurisdiction pursuant to the provisions of section three of the Act. Finally, if dual jurisdiction exists, the inconvenient forum issue must be addressed.

*Schmidt v. Schmidt,* 436 N.W.2d 99, 104 (Minn.1989).

### First Step: Minnesota Jurisdiction

■ Minn.Stat. § 518A.03 (1994) provides that Minnesota courts have jurisdiction to decide child custody matters if: (a) this state is the "home state" of the child or the child's home within six months before commencement of the proceeding; (b) it is in the child's best interests that a Minnesota court assume jurisdiction; (c) the child is physically present in the state, and there are "emergency" conditions; or (d) no other court would have jurisdiction or will exercise jurisdiction. In this case, Minnesota has both home-state and best-interests jurisdiction.

Minn.Stat. § 518A.02 (e) (1994) defines "home state" as:

the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as a parent, for at least six consecutive months * * *.

In this case, at the time of filing, the three children had been living with their mother in Minnesota for six and one-half months.

■ The best interests of the children are premised upon (1) whether the child and at least one parent reside in the state and (2) whether the child and parent have significant connections with the state so that the state has readily available evidence relating to the child's care, protection, training, family relationships and support. Minn.Stat. § 518A.03, subd. 1(b); *Schmidt,* 436 N.W.2d at 104. In this case, all three children and their mother reside in Minnesota. Furthermore, since 1994, Minnesota schools have maintained records of the children's educational training, status and growth, and Minnesota hospitals have maintained records of the children's health, particularly the oldest child's heart condition. Because the children have not lived in Jordan or attended school in Jordan since 1994, and because there is little evidence of medical treatment or medical records in Jordan, Minnesota is in the better position to meet the best interests of the children.

Because Minnesota has both home-state and best-interests jurisdiction, we next consider whether Minnesota shares dual jurisdiction with Jordan.

### Second Step: Dual Jurisdiction

■ A court of this state shall not exercise its jurisdiction under [the UCCJA] if *at the time of filing the petition* a

proceeding concerning the custody of the child was *pending* in a court of another state exercising jurisdiction substantially in *conformity* with the provisions of [the UCCJA] * * *.

Minn.Stat. § 518A.06, subd. 1 (1994) (emphasis added). The UCCJA, therefore, "establishes a 'first in time priority.'" *Schmidt*, 436 N.W.2d at 103. Furthermore, the "conformity" requirement of the statute allows Minnesota to exercise jurisdiction when the foreign jurisdiction does not conform to the UCCJA. *Nazar v. Nazar*, 474 N.W.2d 206, 208 (Minn.App.1991), *review denied* (Minn. Oct. 16, 1991).

In this case, respondent filed her petition for dissolution and custody on October 12, 1994. Appellant commenced an action to "join the children" on June 6, 1995. Accordingly, at the time of filing in Minnesota, there was no proceeding pending in another jurisdiction, and Minnesota was first in time. Additionally, even if the Jordanian proceedings had been simultaneous with the Minnesota proceedings, there would be no dual jurisdiction because there is no evidence the Jordanian court considered the best interests of the child, thereby failing to conform to the UCCJA.

Because there is no dual jurisdiction, we need not consider the third step: inconvenient forum.

## B. Child Support

The district court denied appellant's motion to dismiss with respect to child support for the oldest child, but granted his motion to dismiss with respect to child support for the two youngest children. Appellant argues it is anomalous for the district court to determine it has jurisdiction to grant custody in respondent of all three children, but to award support only as to one. We disagree.

■ Minn.Stat. § 518C.201 (1994), Minnesota's adoption of the Uniform Interstate Family Support Act (UIFSA), provides for extended personal jurisdiction over non-residents in child support proceedings if:

(1) the individual is personally served with a summons or comparable document within this state;

(2) the individual submits to the jurisdiction of this state by consent, * * *;

(3) the individual resided with the child in this state;

(4) the individual resided in this state and provided prenatal expenses or support for the child;

(5) the child resides in this state as a result of the acts or directives of the individual;

(6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;

(7) the individual asserted parentage under sections 257.51 to 257.75; or

(8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

The district court exercised personal jurisdiction over appellant for purposes of awarding child support for the oldest child because (1) respondent conceived the couple's first child in this state, (2) appellant resided in this state and provided for respondent and the unborn child, and (3) appellant lived in this state with the child (if only for a while). The district court held that none of the factors applied to the two youngest children. Because the UCCJA and the UIFSA operate under different standards, we hold it is not anomalous to award custody of all three children to respondent, but to award support only as to one child.

## III.

■ The district court ordered that appellant be allowed liberal, supervised visitation. We hold that the history of abuse in this case compels the State of Minnesota to provide the strongest protection for this mother and these children. Therefore, we modify the visitation order to require that if appellant seeks to exercise visitation, he must be subjected to the strictest supervision through court services, never be alone with the children, and never be allowed to exercise visitation with the children outside Minnesota. Moreover, during visitation, appellant must place his passport in the keep-

ing of the court administrator. While we realize these means of control provide no guarantees, it is our intent to reduce, to as great a degree as we can, the danger of abduction.

## DECISION

The district court properly denied both appellant's motion to dismiss and motion to modify. Because the district court's decision on the issue of visitation was too lenient and allowed too great a risk of abduction, we modify visitation.

**Affirmed as modified.**