In re the APPLICATION OF Sharif Ali Sharif SALAH, Petitioner, Appellant,

v.

Naima S. Awes, a/k/a Naimo Sheck Awes, Respondent.

No. C4–01–145.

Court of Appeals of Minnesota.

June 12, 2001.

Thomas W. Tuft, Valerie A. Downing Arnold, Thomas Tuft Law Offices, St. Paul, for appellant.

Maury D. Beaulier, Bloomington, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, and KALITOWSKI, and LINDBERG, Judges.

## OPINION

LINDBERG, Judge *

While cohabiting in Canada, appellant Sharif Ali Sharif Salah and respondent

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals pur-

Naima S. Awes had a child. Respondent and the child later moved to Minnesota. Appellant sought to have the child returned to Canada under the Hague Convention on the Civil Aspects of International Child Abduction. The district court initially granted appellant's ex-parte petition, but after a subsequent hearing attended by both parties, the district court granted temporary custody to respondent and set a hearing for a permanent custody determination. Appellant moved to dismiss, alleging the district court lacked jurisdiction to address custody because the child had to be returned to Canada. The district court denied his motion. Appellant appeals the denial of his motion. Because the district court failed to explain its application of the Convention and Canadian law, we remand.

## FACTS

The parties had a child in Canada. Later, respondent and the child moved to California and, subsequently, to Minnesota. In June 2000, appellant, still in Canada, petitioned the Canadian Central Authority for assistance in retrieving the child from Minnesota. In the resulting proceeding, filed in Minnesota district court, appellant filed an ex-parte application for a warrant to take immediate physical custody of the child. Appellant's supporting affidavit alleged:

1. The parties were married in Kenya in 1994.

2. Appellant then emigrated to Toronto in Ontario, Canada.

3. Respondent joined him in September 1995.

4. The parties' child was born in August 1996.

5. The parties separated in November 1997 and the child stayed with respondent.

6. The parties contemplated a divorce at that time but decided to wait until the child was older.

7. The parties continued to have a good relationship and appellant visited the child.

8. In June 1998, appellant moved to Montreal, Quebec for school.

9. Respondent and the child remained in Toronto.

10. Appellant visited the child twice per month.

11. In August 1998, respondent told appellant she and the child were going to Windsor, Ontario to visit family but refused to give appellant a phone number in Windsor where she could be reached.

12. Respondent and the child returned to Toronto in November and appellant's visits continued.

13. In April and May 1999, appellant was in Toronto and spent almost all of his time with the child.

14. Appellant returned to Montreal in June and started visiting with the child by phone.

15. In mid-July respondent's phone was disconnected.

16. On August 15, appellant went to Toronto to locate respondent and the child.

17. In Toronto, appellant was told respondent and the child moved to Windsor.

18 In October, a friend told appellant that respondent and the child were in Minneapolis and that respondent had married another man.

suant to Minn. Const. art. VI, § 10.

19. Appellant then contacted, among others, the Montreal police and the Center for Missing and Exploited Children, with the result that he was appointed counsel for pursuing the return of the child through the Canadian Central Authority.

20. Appellant feared that if respondent knew appellant was seeking to have the child returned to Canada, she would abscond with the child.

21. Appellant wanted custody of the child in Canada so that a dissolution proceeding could be filed in Canada and custody addressed in that Canadian proceeding.

After an ex-parte hearing, the district court granted appellant's request for a warrant for immediate custody. Apparently, the child was then taken from respondent.

Two days later, respondent sought an emergency order re-awarding custody to her. The papers supporting her motion alleged:

1. The parties were never married.

2. The parties met in Rome in 1994 and appellant told respondent he could get her into Canada based on false marriage papers and a Canadian sponsorship.

3. In 1995, respondent met appellant at the Canadian border and he provided her with sponsorship papers.

4. The parties then crossed the Canadian border and cohabited.

5. When appellant later learned respondent was expecting a child, he demanded she have an abortion and became physically violent.

6. After six months of abuse, respondent left appellant and entered a battered-women's shelter.

7. Respondent stayed in the shelter for three months, had the child in August 1996, and then stayed an additional four months in the shelter.

8. The shelter then helped respondent move to an apartment.

9. Appellant first visited in mid 1997 and told respondent he would change his behavior and was sorry about his prior conduct.

10. When respondent told appellant that she did not want to continue her relationship with him, he became physically violent and threatened to kill respondent.

11. Based on appellant's threat, respondent decided to leave Canada.

12. Respondent and the child went to live in Los Angeles, California with appellant's cousin.

13. Appellant knew respondent and the child were staying with his cousin.

14. "[O]n a regular basis," appellant called respondent in Los Angeles to threaten her.

15. Appellant did not visit the child over the next two years.

16. While in California, respondent met a man and agreed to marry him.

17. Respondent and her fiancé moved to Minnesota in 1999.

Attached to respondent's affidavit was a letter from the U.S. Justice Department stating it had recommended granting respondent's request for asylum in the United States but that various clearances were required before asylum could be granted in final form [1].

---

1. The appendix to respondent's brief to this court includes a letter from the Canadian women's shelter where she allegedly stayed after leaving appellant. The letter states that when respondent arrived at the shelter on May 18, 1996, she had a broken leg, a black eye, and a bruised body, that respondent's emotional and physical health, as well as her

At the hearing on November 2, respondent's counsel stated that the respondent had never·been to Kenya, that the respondent "agree[s] that [the parties] were married in a religious ceremony that is not viewed as a legally binding marriage through their culture, through the Koran[,]" and that appellant cancelled his "affidavit of support" and that therefore, under Canadian immigration law, respondent would thereby be deported from Canada. Appellant's counsel argued that respondent's abuse allegations were false and had been made to qualify respondent for certain benefits in Canada and that respondent changed the child's name upon entering the United States. On November 7, the district court issued an order that lacked findings of fact. It re-awarded custody to respondent, appointed a guardian ad litem, and set a November 30 hearing to decide custody.

On November 16, appellant filed an amended petition for a warrant for custody of the child. He alleged, among other things, that, under the Convention, the proceeding had to be dismissed for lack of jurisdiction. In a November 30 order, again lacking findings of fact, the district court denied appellant's motion. Appellant appeals.

## ISSUE

Did the district court err in denying appellant's motion to dismiss the custody proceeding for lack of jurisdiction?

## ANALYSIS

■ This appeal involves the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 11601–11610 (2000). The ICARA makes applicable in the United States the Hague Convention on the Civil Aspects of International Child Abduction, *opened for signature*, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, 51 Fed.Reg. 10,493, 10,498 (app.B) (Mar. 26, 1986) (hereinafter Hague Convention). It is undisputed that the United States and Canada both subscribe to the Hague Convention. Appellant alleges that, under the Convention, the Minnesota district court lacked jurisdiction to address the merits of the parties' custody dispute because the child had to be returned to Canada. The denial of a motion to dismiss for lack of jurisdiction is immediately appealable. *Engvall v. Soo Line R.R. Co.*, 605 N.W.2d 738, 744 (Minn.2000) (subject matter jurisdiction); *Viking Eng'g & Dev., Inc. v. R.S.B. Enter., Inc.*, 608 N.W.2d 166, 168 (Minn.App.2000) (personal jurisdiction), *review denied* (Minn. May 23, 2000). The existence of jurisdiction is a legal question which appellate courts review de novo. *See Abu–Dalbouh v. Abu–Dalbouh*, 547 N.W.2d 700, 704 (Minn.App.1996) (addressing existence of jurisdiction under Uniform Child Custody Jurisdiction Act).

■ The Hague Convention's purposes are "to secure the prompt return of children *wrongfully removed* or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention art. 1 (emphasis added); *see Miller v. Miller*, 240 F.3d 392, 398, (4th Cir.2001) (stating "the primary purpose of

pregnancy, were compromised, that respondent was under-nourished and required an I.V. and a special diet, and that respondent and the child left the shelter in November 1996. Because this letter is not in the district court file presented to this Court, we do not consider it. *See* Minn.R.Civ.App.P. 110.01 (defining record on appeal as papers filed in district court, the exhibits, and the transcript, if any); *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988) (stating reviewing court cannot base its decision on matters not submitted in evidence to district court).

the Hague Convention is 'to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court'") (quoting *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir.1993)). Proceedings under the Hague Convention "do not allow a court applying the Convention to adjudicate the merits of any underlying custody claims," only the question of wrongful removal. *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir.1995); *see Friedrich*, 983 F.2d at 1400 (stating under the Hague Convention, "a United States District Court has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim").

Removal of a child from a contracting country is "wrongful" under the Convention if "it is a breach of rights of custody attributed to a person * * * under the law of the State in which the child was habitually resident immediately before the removal" and, "at the time of removal * * * those rights were actually exercised * * * or would have been exercised but for the removal[.]" Hague Convention art. 3(a);(b); *see* Hague Convention art. 14 (stating, in determining whether wrongful removal occurred, judicial or administrative body making that determination may "directly" take notice of law of "State" of child's habitual residence). Here, it is undisputed that, before respondent moved the child to the United States, the child was "habitually resident" in Ontario in Canada.

The parties dispute whether they were married but do not dispute that they cohabited. Therefore, it is presumptively correct to treat appellant as the child's father. *See* Children's Law Reform Act, R.S.O., ch. C–12, § 8(1)(4), (1990) (Can.) (hereinafter CLRA) (stating "there is a presumption that a male person is, and shall be recognized in law to be, the father

of a child" if "[t]he person was cohabiting with the mother of the child in a relationship of some permanence * * * [or] the child is born within 300 days after they ceased to cohabit"). In fact, at oral argument before this court, appellant, through counsel, agreed he is the child's father.

■ Under the CLRA, generally, a child's mother and father "are equally entitled to custody of the child." CLRA § 20(1). There is, however, an exception:

Where the parents of a child live separate and apart and the child lives with one of them with the consent, implied consent, or acquiescence of the other of them, the right of the other to exercise the entitlement of custody and the incidents of custody, but not the entitlement to access, is suspended until a separation agreement or order otherwise provides.

CLRA § 20(4). Here, it is undisputed that the child lived with respondent after the parties separated. The district court did not find whether or to what extent there was an actual or implicit agreement between the parties. And, on this disputed record, the nature of the parties' arrangement (if any) is unclear. Thus, the extent of appellant's rights regarding the child under Canadian law is unclear.

Similarly, under the Convention, if more than a year passes between a wrongful removal and the institution of proceedings to return the child, the child shall be returned "unless it is demonstrated that the child is now settled in its new environment." Hague Convention art. 12. Also, return is not required if the party opposing the return establishes that the person seeking the return, at the time of the removal, "had consented to or subsequently acquiesced in the removal." Hague Convention art. 13(a). Similarly, return is not required if the party opposing the return established that return would create a "grave risk" to the physical or psy-

chological harm to the child or otherwise place the child in an "intolerable situation." Hague Convention art. 13(b). Here, apparently, the child was in Minnesota for over a year before appellant filed his papers in Minnesota district court. And, what, if any, contact appellant has had with the child in the last three years is disputed. Also, at the November 2 hearing, respondent's counsel alleged returning the child to Canada would create a "grave risk" of harm to the child and the existence of an "intolerable situation." Absent findings by the district court, it is unclear whether the district court concluded that the child's removal from Canada was not wrongful under the Hague Convention or that the removal was wrongful but that one or more exceptions applied, allowing custody to be determined in Minnesota. In short, absent an explanation by the district court of what legal and factual determinations it made, how to review those determinations is unclear. And, on this disputed record, we decline to attempt to address the questions as a matter of law.

## DECISION

Because the district court failed to adequately explain its application of the Hague Convention on the Civil Aspects of International Child Abduction and the relevant aspects of Canadian law, this case is remanded. On remand, the district court shall explicitly apply the relevant portions of the Hague Convention and make findings of fact explaining its application of the Hague Convention. Upon making its determination under the Hague Convention, the district court shall reevaluate the propriety of addressing the custody issue in Minnesota and shall explain its ruling on that question. The district court shall reopen the record and take the evidence necessary to allow it to address these questions. We express no opinion on the questions of whether the child must be returned to Canada, whether custody should be addressed in Minnesota, or the ultimate disposition of the custody question.

**Remanded.**