*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1115**

Melissa Dawn Paisley, petitioner,
Respondent,

vs.

Clark Davis Kratzer,
Appellant

**Filed April 11, 2016
Affirmed
Worke, Judge
Dissenting, Johnson, Judge**

St. Louis County District Court
File No. 69DU-FA-15-420

Melissa Dawn Paisley, Duluth, Minnesota (pro se respondent)

Benjamin Kaasa, Duluth, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant-father challenges the district court's determination that it could modify the child-custody order of a Montana court. We affirm.

**FACTS**

Appellant Clark Davis Kratzer (father) and respondent Melissa Dawn Paisley (mother) are parents of a minor child. In December 2009, when the family lived in Montana, mother filed a Petition for Establishment of Permanent Parenting Plan in a Montana court. In March 2010, the Montana court filed an order adopting an "interim parenting plan." In December 2010, mother and the child moved to Minnesota. After two additional interim orders, the Montana court filed an order in September 2011 finding that, despite both parties' requests for "residential custody," it was not "in the best interests of the child to fix residential custody at this time." The order stated that it was in the best interests of the child to be "cared for by both parents in alternating four-month periods until the child is of age to be enrolled in pre-school or school, at which time the court should hear and decide a final parenting plan." The Montana court knew that mother resided in Minnesota when it filed this order. Father exercised his four-month period of parenting time only once, starting in February 2012.

In May 2015, mother moved the Minnesota district court for a new parenting schedule, and sole legal and sole physical custody of the child. Father argued that mother's motion should be rejected because the Montana court retained "continuing, exclusive jurisdiction" over questions related to child custody. At a hearing on the parties' requests for relief, the Minnesota district court judge stated that it had spoken with the Montana judge who issued the orders and "the judge in Montana was very supportive of the Minnesota district court taking jurisdiction of th[e] matter."

2

Following the hearing, the Minnesota district court filed an order ruling that it could address custody and parenting-time questions, and set an evidentiary hearing. The order states that "[t]he Montana Judge believes that jurisdiction in Minnesota is appropriate and would be the more convenient forum given the facts of this case." The order also states that Minnesota is the appropriate forum to address custody and parenting time. A memorandum accompanying the order states:

> In 2011, the Montana District Court decided not to make a custody determination regarding the child because the parents were living in different states and because both parents had cared for the child. For the past four years, there has been no determination of custody for the child. After speaking with the Montana District Court Judge via telephone, the Montana District Court Judge agreed that Minnesota was the most appropriate and convenient forum for this matter.

Father appeals the Minnesota district court's decision that it has "jurisdiction" to modify the order of the Montana court addressing custody and parenting time.

**D E C I S I O N**

Both Minnesota and Montana have adopted versions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Minn. Stat. §§ 518D.101-.317 (2014); Mont. Code Ann. §§ 40-7-101-317 (2014). This court has stated that "[a]pplication of the . . . []UCCJEA[] involves questions of subject matter jurisdiction." *Schroeder v. Schroeder*, 658 N.W.2d 909, 911 (Minn. App. 2003); *see Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn. 2002) (noting that applying the UCCJEA's predecessor statute involved questions of subject matter jurisdiction). *But see McCormick v. Robertson*, 28 N.E.3d 795 (Ill. 2015) (ruling that because subject matter jurisdiction to adjudicate equitable matters –

3

and therefore custody matters – is conferred on Illinois circuit court by the Illinois Constitution, the Illinois Legislature could not deprive the circuit courts of that constitutionally conferred jurisdiction by passing a version of the UCCJEA purporting to condition the existence of the circuit court's "jurisdiction" to address custody-related questions on satisfaction of extraconstitutional conditions recited in the Illinois version of the UCCJEA). "A district court's determination of subject matter jurisdiction is a question of law, which this court reviews de novo." *Schroeder*, 658 N.W.2d at 911.

The UCCJEA states that a court making a custody determination consistent with the relevant provisions of the UCCJEA "has exclusive, continuing jurisdiction over the determination until [certain other conditions are satisfied.]" Minn. Stat. § 518D.202(a); Mont. Code. Ann. §§ 40-7-202(1). Here, it is undisputed that the Montana court's custody rulings satisfied the UCCJEA provisions granting exclusive, continuing jurisdiction.

With an exception not applicable here, a Minnesota district court

> may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under section 518D.201, paragraph (a), clause (1) or (2), and:
>     (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 518D.202 or that a court of this State would be a more convenient forum under section 518D.207[.]

Minn. Stat. § 518D.203. The official comment to this section of the UCCJEA states:

> *This section . . . is addressed to the court that is confronted with a proceeding to modify a custody determination of another State.* It prohibits a court from modifying a custody determination made consistently with this Act by a court in another State unless a court of that State determines that it no longer has exclusive, continuing jurisdiction under [UCCJEA]

4

> Section 202 or that this State would be a more convenient forum under Section 207. The modification State is not authorized to determine that the original decree State has lost its jurisdiction. . . . The court of the modification State must have jurisdiction under the standards of Section 201.

Minn. Stat. Ann. § 518D.203 advisory comm. cmt. (West 2014) (emphasis added).

Father asserts that section 518D.203 and its comment do not apply here because Montana has not lost the exclusive, continuing "jurisdiction" conferred on it by section 202. *See* Minn. Stat. § 518D.102(d) (noting that a "[c]hild custody determination" includes a temporary physical custody order, like the ones issued by the Montana court). But, consistent with its official comment, section 518D.203 allows a Minnesota district court to modify a Montana custody determination *if* the Minnesota district court would have had "jurisdiction" to make an initial custody determination under section 518D.201[1], *and* a Montana court determines that Minnesota is a more convenient forum to litigate custody matters.

***Initial custody determination***

A Minnesota district court has "jurisdiction" to make an initial child custody determination if at least one of the conditions listed in section 518D.201 exists. Minn. Stat.

---

[1] Minnesota appellate courts have not specifically identified the date as of which a Minnesota district court seeking to modify a foreign custody determination must satisfy the prerequisites for making an "initial" custody determination under the UCCJEA. Foreign authority, however, identifies the relevant date as the date as of which the modification petition is filed. *See Staats v. McKinnon*, 206 S.W.3d 532, 547-48 (Tenn. Ct. App. 2006) (stating that, under the Tennessee version of the UCCJEA, "the court must decide whether it would have jurisdiction to make an initial custody determination under the present circumstances"); *see generally* Minn. Stat. § 645.22 (2014) (stating that "[l]aws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them").

§ 518D.201(a)(1)-(4). Here, the relevant condition in section 518D.201 is that Minnesota "is the home state of the child on the date of the commencement of the proceeding[.]" *Id.* A child's "[h]ome state" is "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding."[2] Minn. Stat. § 518D.102(h).

Here, Minnesota is the home state of the child because the child has lived in Minnesota with mother since December 2010, and the child's only extended absence from Minnesota was in 2012 when father exercised his four-month parenting period. Thus, had mother's motion to modify custody been a motion for an initial custody determination, the Minnesota district court would have had "jurisdiction" to make that initial determination.

*Convenient forum*

Regarding whether Minnesota is a convenient forum for litigating custody related matters, the Minnesota district court's order states that the Montana court "believes that jurisdiction in Minnesota is appropriate and would be the more convenient forum given the facts of this case." This statement is more fully developed in the memorandum accompanying the order, and is consistent with the Minnesota district court's statements from the bench at the hearing regarding its communication with the Montanta judge. Father argues that the order, memorandum, and statements from the bench do not satisfy the UCCJEA's requirement for a "record" of the communications between the courts.

---

[2] It is undisputed that mother's motion to the Minnesota district court to modify custody and parenting time constitutes a "child custody proceeding." *See* Minn. Stat. § 518D.102(e) (stating that a "'[c]hild custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue").

The UCCJEA addresses communication between courts, stating:

> (a) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.
> (b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
> . . . .
> (d) [With an exception not relevant here], a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.
> (e) For the purposes of this section, "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

Minn. Stat. § 518D.110. The official comment to this section notes that a

> record includes notes or transcripts of a court reporter who listened to a conference call between the courts, an electronic recording of a telephone call, a memorandum or an electronic record of the communication between the courts, or a memorandum or an electronic record made by a court after the communication.

Minn. Stat. Ann. § 518D.110 advisory comm. cmt. (West 2014).

This record includes three recitations of the contact between the Minnesota and Montana courts. The first is the Minnesota district court's statements from the bench. *See* Minn. R. Civ. P. 52.01 (stating that "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of evidence"). The second and third are in the Minnesota district court's order and accompanying memorandum. Each of these recitations states that the Montana court

7

believes that Minnesota is the more convenient forum in which to litigate custody issues. For two reasons, we conclude that, in this particular case, we need not address whether the Minnesota district court's record of its communications with the Montana court satisfied the UCCJEA.

First, we cannot assume that the Minnesota district court misrepresented the Montana court's view regarding whether Minnesota was a more convenient forum for litigating the parties' custody issues. *See Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) (stating that appellate courts cannot assume district court error); *Luthen v. Luthen*, 596 N.W.2d 278, 283 (Minn. App. 1999) (applying *Loth*). And our general refusal to assume district court error applies in the precise context of a district court's articulation of the basis for its decision. *See In re Paternity of B.J.H.*, 573 N.W.2d 99, 102 (Minn. App. 1998) (noting that an argument made by the appellants "[was] not viable unless we assume the district court erred by misrepresenting the basis for its decision. [And] [w]e cannot assume district court error"). Thus, a reversal based on an assumption that the Montana court did not, in fact, believe that Minnesota is the more convenient forum for litigating custody issues would be inconsistent with caselaw.

Second, if we reverse and remand based on the allegedly inadequate record of the contact between the Minnesota and Montana courts when we already know the result of that contact, the remand becomes a dubious use of judicial resources. On this record, we see little—if any—possibility that a remand will generate a different result. Therefore, on this record, a remand is neither required nor prudent. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (refusing to remand in a child-custody case when "from reading the files,

8

the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result); *Tarlan v. Sorensen*, 702 N.W.2d 915, 920 n.1 (Minn. App. 2005) (refusing, in a custody dispute, to remand when doing so "would be futile at this juncture" (citing *Grein*)).

### *Lack of an order*

Addressing a predecessor of the UCCJEA, the Minnesota Supreme Court stated: "[I]nformal comments cannot serve as the basis for an exercise of jurisdiction by the courts of this state. Instead, [the predecessor statute] contemplate[d] formal action by th[e] state rejecting jurisdiction." *Landa v. Norris*, 313 N.W.2d 423, 425 (Minn. 1981). Father cites this portion of *Landa*, and argues that, here, the Minnesota district court was precluded from acting without a formal order by the Montana court stating that Minnesota is the more convenient forum for litigating the parties' custody issues. We disagree.

First, *Landa*'s next sentence states: "Inasmuch as this court is unclear as to the present intention of the Ohio courts, the matter is remanded . . . ." *Id.* On the record presented to this court, however, we are not unclear about the present intention of the Montana court; the Montana court believes that Minnesota is the more convenient forum in which to litigate the parties' custody issues. Therefore, we do not read *Landa* to require a remand here.

Second, when addressing whether a hearing review officer had jurisdiction to consider a cross appeal in a dispute under the state's special education laws, this court noted that reversing and remanding "would not be constructive[,]" and stated that the intent behind the relevant statute "should not be thwarted by fanciful procedural challenges

9

raising harmless jurisdictional defects[.]" *E.N. v. Special Sch. Dist. No. 1* (*In re E.N.*), 603 N.W.2d 344, 350 (Minn. App. 1999). On this record, any purportedly jurisdictional error by the Minnesota district court in failing to obtain on paper, as opposed to orally, the Montana court's determination that Minnesota is the more convenient forum for litigating the parties' custody issues is harmless. Therefore, in this case, we decline to reverse and remand for the Minnesota district court to obtain a written order from the Montana court.[3] *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored); *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 98 (Minn. 1987) (stating that "[a]lthough error may exist, unless the error is prejudicial, no grounds exist for reversal"); *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987) (stating that a district court will not be reversed if it reached an affirmable result for the wrong reason); *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (refusing to remand for de minimis, technical error).

**Affirmed.**

---

[3] We decline to speculate about what might happen in other cases. Further, while we note that, in this case, a reversal and a remand are required for neither a lack of a record of the communications between the courts nor the lack of a written order from the Montana court, we recognize that the processes followed in this case were not optimal.

**JOHNSON**, Judge (dissenting)

I respectfully dissent from the opinion of the court. The district court erred by modifying the Montana court's child-custody order without a proper determination by the Montana court that a Minnesota court would be a more convenient forum.

Because the Montana court previously had issued a child-custody order, the Minnesota district court is not permitted to modify the child-custody order unless the Montana court "determines [1] it no longer has exclusive, continuing jurisdiction under section 518D.202 or [2] that a court of this state would be a more convenient forum under section 518D.207." Minn. Stat. § 518D.203(1) (2014). The Minnesota court found that the Montana court had made the second type of determination described in section 518D.203(1). Kratzer argues on appeal that the Montana court did not properly make such a determination because the Montana court did not issue an order stating that Minnesota would be a more convenient forum. Kratzer's argument has merit.

In a case governed by the UCCJEA's predecessor (the Uniform Child Custody Jurisdiction Act, *i.e.*, the UCCJA), a Minnesota district court ruled on a parent's motion for temporary custody after receiving "informal information . . . to the effect that the Ohio courts no longer intend to exercise their primary jurisdiction." *Landa v. Norris*, 313 N.W.2d 423, 425 (Minn. 1981). On appeal, the supreme court concluded that the Minnesota district court erred by exercising jurisdiction over the custody dispute without a formal ruling by the Ohio court that the Ohio court did not intend to exercise jurisdiction over the matter. *Id.* The UCCJA provision on which the supreme court relied would have allowed the Minnesota court to assume jurisdiction only if the Ohio court had "declined to

D-1

assume jurisdiction to modify the decree." Minn. Stat. § 518A.14, subd. 1 (1980). The supreme court reasoned that the UCCJA provision "contemplates formal action by that state rejecting jurisdiction" and that "informal comments cannot serve as the basis for [a Minnesota court's] exercise of jurisdiction." *Landa*, 313 N.W.2d at 425 (citing Minn. Stat. § 518A.14 (1980)). The supreme court's interpretation of the UCCJA is a useful guide when interpreting the UCCJEA. *See In re Welfare of Children of D.M.T.-R.*, 802 N.W.2d 759, 763 (Minn. App. 2011) (citing *Abu-Dalbouh v. Abu-Dalbouh*, 547 N.W.2d 700, 702, 704 (Minn. App. 1996)). In light of *Landa*, the district court erred by asserting jurisdiction over Paisley's motion to modify custody.

Furthermore, *Landa* is in harmony with the fundamental principle that a court's determination of a disputed issue should be made formally, such as in a written order or in an oral ruling that is reported and embodied in a written transcript. This type of formality promotes transparency and clarity, which is especially important on the issue of jurisdiction. The purpose of the UCCJEA is to provide clarity as to which state's court system will consider and decide a motion to modify child custody in an interstate child-custody dispute. *Stone v. Stone*, 636 N.W.2d 594, 597 (Minn. App. 2001). Consistent with this purpose, the official comments to the UCCJEA expressly state that the first type of determination in section 203(1) must be made in a written order: "A party seeking to modify a custody determination must obtain an order from the original decree State stating that it no longer has jurisdiction." Minn. Stat. Ann. § 518D.202, official cmt. (West 2006). Although there is no similar comment concerning the second type of determination in section 203(1), the nature of the issue to be resolved requires a similar level of formality.

D-2

Specifically, section 207 of the UCCJEA provides that the court possessing jurisdiction, in determining whether another state is a more convenient forum, "shall consider all relevant factors, including" eight factors specified in the statute. Minn. Stat. § 518D.207(b)(1)-(8) (2014); Mont. Code Ann. § 40-7-108(2)(a)-(h) (2015). If a court were allowed to make the second type of determination in section 203(1) in an informal manner, without a written order or a transcript reflecting an oral ruling on the record, there would be no way for the parties to know whether the court had considered all relevant factors and whether the court's reasons are proper and, furthermore, no means of obtaining meaningful appellate review. *See Rosenfeld v. Rosenfeld*, 311 Minn. 76, 81-82, 249 N.W.2d 168, 171 (1976); *Wallin v. Wallin*, 290 Minn. 261, 266-67, 187 N.W.2d 627, 631 (1971); *Rogge v. Rogge*, 509 N.W.2d 163, 165-66 (Minn. App. 1993), *review denied* (Minn. Jan. 28, 1994); *Lawver v. Lawver*, 360 N.W.2d 471, 472 (Minn. App. 1985); *see also Westlake v. Westlake*, 753 S.E.2d 197, 202 (N.C. Ct. App. 2014) (reversing and remanding trial court's determination that it is inconvenient forum because "transcript and record indicate no consideration" of statutory factors in section 207 of UCCJEA).

The absence of a formal determination by the Montana court in this case is not cured by the oral communications between the Montana court and the Minnesota court. To be sure, communications between courts of two states may be useful in facilitating the resolution of jurisdictional issues. *See* Minn. Stat. § 518D.110 (2014); Mont. Code Ann. § 40-7-139 (2015). But the UCCJEA does not contemplate that the original decree court will make a section 207 determination *in the course of* such communications. The official comment to section 207 states, "*Before determining whether to decline or retain*

D-3

*jurisdiction*, the court of this State [*i.e.*, Montana in this case] may communicate, in accordance with Section 110, with a court of another State [*i.e.*, Minnesota in this case] and exchange information pertinent to the assumption of jurisdiction by either court." Minn. Stat. Ann. § 518D.207, official cmt. (West 2006) (emphasis added); Mont. Code Ann. § 40-7-108, commissioner's note (2014) (emphasis added)). This comment assumes that a court with exclusive jurisdiction will make a section 207 determination *after* engaging in communications with a court of another state pursuant to section 110. In this case, the Montana court never did so.

I would not resolve this appeal by reasoning that the absence of a formal section 207 determination by the Montana court is a harmless error. A court with exclusive jurisdiction over a matter should not be deemed to have yielded its jurisdiction unless that court has clearly said so in the customary formal manner. That is the essence of the supreme court's opinion in *Landa*. *See* 313 N.W.2d at 425. The absence of an order from the Montana court in this case creates no less uncertainty than the absence of an order from the Ohio court in *Landa*. *See id.* Because the error was not a harmless error in *Landa*, it is not a harmless error in this case. *See id.*

For these reasons, I would reverse the order of the district court on the ground that it is without jurisdiction to consider Paisley's motion without a proper determination by the Montana court that a Minnesota court would be a more convenient forum.